UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SERGIO MARTIN, | ) | 1:08cv00194 GSA |
| | ) | |
| | ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**BACKGROUND**

Plaintiff Sergio Martin ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On August 27, 2008, the action was reassigned to the Honorable Gary S. Austin for all purposes.

**FACTS AND PRIOR PROCEEDINGS**[2]

On June 10, 2005, Plaintiff filed an application for supplemental security income, alleging disability since January 1, 1997, due to anger symptoms, loss of memory, bipolar disorder, depression and anxiety. AR 18, 69. The application was denied initially and upon reconsideration. AR 18. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). AR 18. ALJ Sally C. Reason held a hearing on February 7, 2007, and issued an order denying benefits on March 7, 2007. AR 22. On January 9, 2008, the Appeals Council denied review. AR 4.

<u>Hearing Testimony</u>

ALJ Reason held a hearing on February 7, 2007, in West Los Angeles, California. Plaintiff appeared and testified. He was represented by Hector Yepez. AR 18. Also present at the hearing were Vocational Expert ("VE") June Hagen, and Medical Expert ("ME") Jack Rothberg, M.D. AR 18,168-184.

Plaintiff testified that he was forty-five years old at the time of the hearing. He stated that he had completed his education up to the tenth grade. AR 176-177. According to Plaintiff, he had last held a job about three or fours years ago. AR 177. At that time, Plaintiff was employed as a plumber's helper. AR 177. When asked why Plaintiff felt he could no longer engage in any kind of work, he replied that sometimes his knees would "go bad." AR 177. Additionally, Plaintiff recounted manic episodes that would occur intermittently. AR 178. At such times, Plaintiff often left his job because he could not deal with the stress of the manic episodes. AR 178.

Plaintiff was asked whether his manic episodes were in any way related to his drinking. Plaintiff admitted to having consumed alcohol in the past, but denied any present use. AR 178. According to Plaintiff, such episodes were not precipitated by alcohol or drug use. AR 178. Plaintiff later admitted to the occasional use of alcohol, but stressed that he avoided drinking because it invariably landed him in trouble, and more specifically, in jail. AR 178.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

When asked to recall the last time he had used drugs or alcohol, Plaintiff replied that he often underwent testing up in the north. AR 179. When prompted further, Plaintiff replied "It was the day before I got arrested for drinking." AR 179.  According to Plaintiff, he had not consumed any alcohol since July 26, 2006, the date of the arrest. AR 179. However, when pressed, Plaintiff did say that he had been arrested four or five months prior to the hearing for having drugs on his person, even though he denied using them. AR 169. Plaintiff claimed that he had been out recycling and had picked the drugs up. He was subsequently sentenced under the provisions of "Prop 36." AR 170.

Plaintiff then described his symptoms as they related to his bipolar disorder. He said that his head would get "really hot," and that he would experience "swinging mad moods." AR 179. Sometimes, his mood would change drastically and he would feel like crying. At such times, his girlfriend would help out. AR 179. Plaintiff also experienced sleep disturbances, and claimed he was often hyperactive and had difficulty focusing. AR 180.

In response to the ME's questions, Plaintiff replied that he was currently undergoing psychological and medical treatment in Oakhurst, in Madera county. AR 169. Plaintiff was receiving both counseling and medication. At the time of the hearing, Plaintiff was taking Depakote, although he had been taken off two other medications on account of their side effects. When asked about the dosage of Depakote, Plaintiff replied "a thousand" per day. AR 169. According to Plaintiff, the Depakote had helped alleviate his symptoms. AR 169.

During the hearing, VE Hagen also testified. She concurred with the two jobs that were provided by a previous VE, and were described by Plaintiff in the record. AR 180. These two vocations were plumber's helper and automobile dealer. The VE was not able to ascertain the exertional level of Plaintiff's past relevant work as a plumber's helper, and sought further clarification from Plaintiff on that issue. AR 180.  Plaintiff said that he could lift ten to fifteen pounds at the most, which the VE categorized as being at the light level. AR 180. The VE also surmised that the Specific Vocational Preparation ("SVP") was in the skilled level. AR 181.

The VE was then presented with the first hypothetical in which she was asked to consider a worker of Plaintiff's age, education and  work experience, who was limited in his social

3

functioning abilities, and whose limitations varied from mild to moderate. AR 181. Additionally, this hypothetical person also had limitations with regard to concentration, persistence and pace, and these limitations also varied from mild to moderate. AR 181. When asked whether such limitations would preclude past work, the VE replied that her response would depend on whether the limitations were mild or moderate, stressing that there was a significant difference between the two. AR 181. She then stated that if the limitations were mild, then they would not preclude past work; however, if they were moderate, their effect on Plaintiff's concentration, persistence and pace would be an issue. AR 192. The VE testified that Plaintiff could still engage in unskilled work that was simple and repetitive, despite the moderate limitations. She did however add that it would eliminate Plaintiff's past work since that was not at the simple level. AR 182. The VE then addressed the second vocation the previous VE had mentioned, that of automobile dealer, which she believed had an SVP of two, and a reasoning level beyond a one. According to the VE, Plaintiff's limitations would also preclude his past relevant work as an automobile dealer. AR 182-183.

The VE then mentioned other jobs at the medium exertional level. AR 183. One such job was that of a production helper, with an SVP of one, and with a prevalence of about 1,100 such positions in the local economy, and 57,000 in the national economy. AR 183. The VE also mentioned cleaner and housekeeper. This occupation was SVP two, but at reasoning level one, making it simple work. In the local economy, there were about 18,000 such jobs available, and 125,000 such jobs available nationally. AR 183. The VE also mentioned bottling line attendant, which was light, with an SVP of one. There were 1,300 such jobs available in Los Angeles, and 60,000 nationally. AR 183-184.

When asked if her responses would be affected if the limitations of the hypothetical individual were in the marked range, the VE stated that all work would be precluded. AR 184. Furthermore, the VE was asked to consider how her response would change if the hypothetical person were to miss more than four days of work per month. The VE reiterated her previous response: that all work would be precluded. AR 184.

During the hearing, ME Rothberg also testified, specifically with regard to the psychiatric issues. He stated that Plaintiff suffered from bipolar disorder, some anti-social personality characteristics and also showed indications of substance abuse. AR 170-171. The ME opined that absent drug use, it was unlikely that Plaintiff's condition would be severe enough to meet the listings. The ME claimed that although Plaintiff did have a 12.04 mood disorder, he did not think it was at a level that met the listing. AR 171. The ME did not believe that Plaintiff's activities of daily living would be significantly impaired by his medical conditions, but did find mild to moderate impairment in Plaintiff's social functioning ability. AR 171. The ME also believed that Plaintiff's concentration, persistence and pace would be in the mild to moderate range when stabilized. AR 171.

With regard to the report compiled by M. Rauf, M.D., the ME opined that the Global Assessment Functioning (GAF)[3] score of 55 was probably not at a level that would meet the listing in and of itself, and that it did not take into consideration what Plaintiff's condition would be absent any drug use for a sustained period of time. AR 173. According to the ME, most people with a GAF score of 55 were capable of performing some work, even if somewhat limited, and this would be true even if periods of instability due to substance abuse were subtracted. AR 173. The ME therefore concluded that, in any event, the GAF score would rise so long as Plaintiff abstained from the use of drugs. AR 173.

Although the ME concurred with Dr. Rauf's diagnoses pertaining to bipolar disorder and anti-social personality traits, the ME commented on the fact that Dr. Rauf had made no mention of Plaintiff's substance abuse history in his report. AR 174. The ME also pointed out that Dr. Rauf noted marked impairment in Plaintiff's degree of limitation, but that this was inconsistent with a GAF score of 55. AR 175. According to the ME, an individual could have marked impairments in several areas and still have a GAF score lower than 55. AR 175. The ME

---

[3] The GAF is a numerical scale (0 through 100) used by mental health clinicians and physicians to subjectively rate the social, occupational and psychological functioning of adults. A score of 55 would indicate moderate symptoms or any moderate difficulty in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders-Fourth Edition (DSM-IV).

commented that the inherent inconsistency in Dr. Rauf's diagnoses "raises some questions." AR 175.

Medical Record

The entire record was reviewed by the court, however, only those portions relevant to the instant proceedings are briefly summarized below.

On November 12, 2004, Plaintiff underwent treatment at the Los Angeles County Department of Mental Health (LACDMH), for complaints of insomnia and hyperactivity. AR 102. An initial psychiatric evaluation of Plaintiff revealed that Plaintiff had no prior psychiatric history, but had a long criminal history as well as a past history of alcohol/crack dependence. AR 104. Plaintiff was prescribed Depakote at that time. AR 102.

Treatment notes from the Venice Family Clinic, dated November 15, 2004, revealed the presence of glass shards in Plaintiff's right upper arm. AR 94. A sterile surgical procedure was performed in order to remove the shards. AR 94. There was no indication that Plaintiff suffered any functional restrictions as a result of the procedure. AR 13.

A medication log from LACDMH, dated March 3, 2005, showed that Plaintiff had been prescribed Depakote and Seroquel. Plaintiff had also reported improved sleep as a result of his medications. AR 100.

On August 3, 2006, Camille Capo, Plaintiff's therapist at the Madera County Behavioral Health Services, documented that Plaintiff suffered from Bipolar II Disorder and that his mood could fluctuate between major depressive episodes and hypo-manic episodes, sometimes within the same day. AR 121. The therapist wrote that because of the extreme fluctuations in mood, "traditional employment environments with schedules and the variables of public contact are prohibitive." AR 121.

On January 5, 2007, Dr. Rauf performed a mental residual functional capacity ("RFC") assessment of Plaintiff. He opined that Plaintiff's condition was likely to improve if he complied with his treatment regimen. AR 146. Dr. Rauf also determined that Plaintiff was moderately to markedly impaired in his ability to understand and remember detailed instructions, and that he was markedly impaired in his ability to carry out detailed instructions. AR 149. Dr. Rauf also

noted that Plaintiff was moderately to markedly impaired in his ability to sustain an ordinary routine without special supervision. AR 149. He similarly found that Plaintiff was markedly impaired in his ability to interact appropriately with the general public and in his ability to accept instructions and respond appropriately to criticism from supervisors. AR 150. Dr. Rauf also found marked impairments in Plaintiff's ability to respond appropriately to changes in work setting, in his ability to be aware of normal hazards and take appropriate precautions, in his ability to set realistic goals or make plans independently of others, and in his ability to tolerate normal levels of stress. AR 150. Additionally, Dr. Rauf opined that Plaintiff was likely to be absent from work more than four days per month as a result of his impairments. AR 150.

<u>ALJ's Findings</u>

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since the date he applied for benefits, and that Plaintiff had the severe impairment of bipolar disorder. AR 21.

Based on a careful consideration of the entire record, the ALJ determined that Plaintiff was limited to simple and repetitive work based on moderate difficulties in concentration. AR 20. The ALJ also found that Plaintiff was restricted to limited public contact based on his mild to moderate difficulties in social functioning. AR 20.

Additionally, the ALJ noted that Plaintiff's statements concerning his impairment and their impact on his ability to work were not entirely credible in light of the degree of medical treatment required, discrepancies between Plaintiff's assertions and information contained in the documentary reports, the reports of the treating and examining practitioners, and the medical history. AR 22.

The ALJ found that Plaintiff's RFC precluded him from returning to his past work, but found that Plaintiff could adjust to work as a production helper, cleaner/housekeeper or bottling line attendant. AR 20-21. The ALJ also determined that Plaintiff would not be found disabled without considering the evidence of substance abuse. AR 21. Therefore, the ALJ concluded that Plaintiff was not disabled at any time through the date of the decision. AR 22.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20

C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Applying this process in this case, the ALJ found that Plaintiff: (1) has not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform his past relevant work as a plumber's helper and (5) retained the RFC to perform simple and repetitive work based on moderate difficulties in concentration.   AR 20-22.

Here, Plaintiff argues that the ALJ erred in failing to attach due weight to the opinion of the treating physician, thus erroneously concluding at step five of the sequential evaluation that Plaintiff was capable of performing gainful work in the national economy. Therefore, Plaintiff contends that this Court should reverse and order the immediate payment of benefits.

## DISCUSSION

Treating Physicians' Opinions

Plaintiff contends that the ALJ erred in failing to properly evaluate the opinion of the treating physician. More specifically, Plaintiff argues that the ALJ erred in adopting the opinion of Dr. Rothberg, the nonexamining, testifying physician, over that of Dr. Rauf, the treating physician.

Cases in the circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). "Medical opinions and conclusions of treating physicians are accorded special weight because these physicians are in a unique position to know claimants as individuals, and because the continuity of their dealings with claimants enhances their ability to assess the claimant's problems." *Embrey v. Bowen,* 849 F.2d 418, 421-422 (9th Cir. 1988). Also, this court "affords greater weight to a treating physician's opinion because 'he is employed to cure and has

9

a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If a treating doctor's opinion is not contradicted by another doctor (i.e., there are no other opinions from examining or non examining sources), it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Embrey,* 849 F.2d at 418, 422; *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). If the ALJ rejects a treating or examining physician's opinion, even if it is controverted by another doctor, he must provide specific, legitimate reasons based on substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes,* 881 F.2d at 747, 751. The ALJ must do more than offer his own conclusion. He must set forth his own interpretations and explain why they, rather than the doctors,' are correct." *Embrey*, 849 F.2d at 421-422.

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating physician's opinion, it may constitute "substantial evidence" when it is consistent with other independent evidence in the record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148-1149 (9th Cir. 2001). In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a non examining medical advisor. *Magallanes,* 881 F.2d at 751-55; *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995). Furthermore, the reports of consultative physicians called in by the Secretary may serve as substantial evidence. *Magallanes*, 881 F.2d at 752 (quoting *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984)).

"In a Social Security disability proceeding, an ALJ may discredit treating physicians opinions that are conclusory, brief and unsupported by the record as a whole, or by objective medical findings." *Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1195 (9th

Cir. 2004). "Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d at 1149.

Here, in rejecting the opinion of the treating physician, the ALJ did not rely on the non examining physician's testimony alone. Rather, there was an abundance of evidence that supported the ALJ's decision. For instance, the ALJ also relied on the contrary reports from Plaintiff that conflicted with the treating physician's opinion. The ALJ noted that Plaintiff testified that Depakote was helping him and that he did not experience any of his psychiatric symptoms. AR 19. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Commissioner of Social Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); see also *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication).

The ALJ was required to offer specific, legitimate reasons based on substantial evidence for rejecting the opinion of the treating physician based in part on the testimony of a nonexamining medical advisor. *Magallanes*, 881 F.2d at 752-53. The ALJ noted that Plaintiff had undergone treatment at the Los Angeles Department of Mental Health for his angry outbursts, depression and anxiety. AR 19. However, the treatment notes evidenced no prior psychiatric history. AR 19. The ALJ also found that Ms. Capo's assessment of Plaintiff's abilities, based upon her evaluation of Plaintiff during the period from April 11, 2006 to August, 3, 2006, was inconsistent with the objective evidence as a whole. AR 19. Ms. Capo had suggested that Plaintiff was ill-suited to traditional employment environments, however, her statements contradicted the other evidence in the record. A medication log from the LACDMH dated March 3, 2005, indicated that Plaintiff was sleeping better, in part due to the Seroquel. AR 100. Another medication log, dated January 1, 2006, indicated that Plaintiff felt that the medication helped to calm him down. AR 142. Plaintiff testified that Depakote was helping him significantly, and he was no longer experiencing any of his psychiatric symptoms. AR 19.

Plaintiff also reported that he was feeling better as a result of the medications he had been prescribed. AR 20.

Having reviewed the mental RFC questionnaire submitted by Dr. Rauf, the ALJ found the report to be internally inconsistent and therefore "not particularly persuasive in light of the evidence as a whole." AR 20. The ALJ also noted that Plaintiff had only started seeing Dr. Rauf in December 2006, and only visited him once a month. AR 20, 146.[4][5] More importantly, the ALJ noted that Dr. Rauf had found Plaintiff to be "moderately" to "markedly" limited in a number of functional capacities, including: the ability to carry out detailed instructions, the ability to sustain an ordinary routine without special supervision, the ability to work in coordination with others, the ability to complete a normal workday and workweek, the ability to interact appropriately with the general public, and the ability to respond appropriately to changes in work setting. AR 20. Dr. Rothberg commented however, that the GAF score of 55 assigned by Dr. Rauf was inconsistent with the numerous marked findings. AR 20. Furthermore, Dr. Rauf's own statements regarding Plaintiff's treatment and response thereto suggested a higher level of functioning than that indicated by the marked limitations. For instance, Dr. Rauf noted that Plaintiff had not exhibited any aggressive behavior recently, and had not reported any side effects from medication. AR 20.

The ALJ concluded, on the basis of the evidence in the record, that assuming Plaintiff is clean and sober, his mental impairments should result in no more than the following limitations: no restriction of activities of daily living, mild to moderate difficulties in maintaining social functioning, moderate deficiencies in concentration, persistence or pace resulting in failure to complete tasks in a timely manner, and no episodes of deterioration or decompensation. AR 20. Therefore, based on a careful review of the entire record, the ALJ determined that the treating physician's views deserved only minimal evidentiary weight. In a social security proceeding, an

---

[4]The hearing was held on February 7, 2007, and considering Plaintiff visited Dr. Rauf once a month, it was reasonable to infer that the ALJ concluded Plaintiff had seen Dr. Rauf on approximately two or three occasions.

[5]Cf. *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1464 (9th Cir. 1995) (the ALJ's reliance on "unexplained, or inadequately explained failure to seek or follow treatment" is permissible); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

ALJ may discredit treating physicians' opinions that are unsupported by the record as a whole, or by objective medical findings, and may, therefore, properly rely on testimony of a nonexamining physician. *Batson v. Commissioner of Social Security Admin*, 359 F.3d at 1195. Therefore, based on the above, the ALJ gave specific and legitimate reasons, supported by substantial evidence in the record, for favoring the opinion of the nonexamining physician over that of the treating physician.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Sergio Martin.

IT IS SO ORDERED.

Dated:   **October 27, 2009**                      /s/ **Gary S. Austin**
                                                         UNITED STATES MAGISTRATE JUDGE